UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FLOYD, ET AL.                                CIVIL ACTION

VERSUS                                       NO: 11-2713

WELLS FARGO HOME MORTGAGE                    SECTION: "J" (5)
CO.

**ORDER AND REASONS**

Before the Court are Defendant Wells Fargo Home Mortgage Co.'s ("Wells Fargo") Motion to Dismiss (Rec. Doc. 15), Plaintiffs Marion and Cheryl Floyd's opposition to same (Rec. Doc. 17), Wells Fargo's Reply (Rec. Doc. 23), the Floyds' Sur-reply (Rec. Doc. 26), and Wells Fargo's Opposition to the Floyds' Sur-reply (Rec. Doc. 27). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that Wells Fargo's Motion to Dismiss (Rec. Doc. 15) should be **GRANTED IN PART and DENIED IN PART**.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This lawsuit presents various contract and tort claims for

1

alleged improper accounting practices that allegedly have
resulted in financial harm to the plaintiffs in the form of high
interest rates, unfavorable credit reporting, high monthly
mortgage payments, and related financial injury.  Plaintiffs Mr.
and Mrs. Floyd allege that their bank, Defendant Wells Fargo,
erred in its accounting for two separate transactions.  The
Floyds allege that based on these two transactions, Wells Fargo
has increased their monthly mortgage note, has sent collection
notices, and has harassed them through its collection procedures.
The instant case was filed on October 31, 2011, but Plaintiffs
back in 2007 filed a lawsuit (the "2007 Action") that in its
factual allegations appears nearly identical to the instant one.
The glaring difference in the complaints filed in 2007 and in
2011 is that the former contains—and the latter does not
contain—claims under the Fair Debt Collection Practices Act and
the Louisiana Unfair Trade Practices Act.  See Rec. Doc. 1-1, at
6-7 (attachment of 2007 complaint as exhibit to filing of 2011
complaint).  Without giving any written reasons and after hearing
oral argument on a motion to dismiss, Judge Porteous dismissed
the 2007 Action with prejudice as to federal claims but without
prejudice as to state law claims.  Civil Action No. 07-2917, Rec.
Doc. 38.

The complaint in the instant lawsuit alleges the following facts.  Plaintiffs mistakenly made two mortgage payments instead of one on November 15, 2006.  Upon discovering the double payment, Mr. Floyd notified Defendant's Customer Service Department, who advised that a refund of one of the payments would be made within five days.  The refund did not appear, so Mr. Floyd called Defendant, who advised that the funds had been credited to Plaintiffs' account.  When Mr. Floyd asked which account, Defendant's representative repeated an account number that did not match Plaintiffs' account number.  The representative stated that he would research the issue and take the steps necessary to correct the problem.  By the end of November, Plaintiffs' account still had not been credited for the mistaken double payment.  Mr. Floyd called to ask Defendant's Customer Service Department whether the overpayment could be applied to the December 2006 payment obligation.  The representative responded negatively.  Eventually, Plaintiffs received reimbursement on December 15, 2006 through a credit to their account.  Plaintiffs continued to make regular monthly payments.

In February 2007, Defendant's Collection Department called the Floyds, seeking reimbursement for the alleged payment made to

Plaintiffs in November 2006, though Plaintiffs repeatedly told Defendant that their checking account never reflected the alleged reimbursement for the duplicate mortgage payment.  These events constitute the first transaction ("Transaction One").  Thus, stated directly and by implication, Transaction One entails factual allegations that (1) Plaintiffs mistakenly made a double payment, (2) Defendant apparently credited the wrong account in attempting to reimburse Plaintiffs for their double payment, (3) Defendant then correctly credited Plaintiffs' account, and (4) Defendant mistakenly sought to collect from Plaintiffs the payment that it actually made to the wrong account.  The second alleged transaction ("Transaction Two") is that in February 2007, Defendant's Collection Department called to inform Plaintiffs that their January 2007 payment was never honored by the drawee bank.

The complaint alleges that subsequent to Transactions One and Two, a series of events transpired that caused Plaintiffs the injuries sued upon.  It alleges that continuing from January 2007, Defendant sought reimbursement for the extra credit it believed that it made in Transaction One and reimbursement for the alleged dishonored check that is the subject of Transaction Two.  Plaintiffs allege that Defendant's Collection Department

made numerous threatening phone calls to attempt to collect the reimbursements, as early as 8:30 a.m. Monday through Saturday. They state that Defendant forwarded collection notices—essentially stating that their account was placed into arrears.  They aver that they called Defendant's Customer Service Department and spoke to numerous representatives to seek relief from the non-stop telephone calls.  Plaintiffs claim that no one ever corrected the problem.  They allege a "continuing violation":

> 19. To date, Defendants conduct has not halted. Plaintiffs continue to suffer due to the fact that Defendant will not correct its error. This continuing violation occurs as Plaintiffs suffer economic loss when they have to pay higher payments each month since Defendant's error.

> 20. Then, Plaintiffs suffer when Defendant continues to report negative payment history which hinders Plaintiffs' ability to refinance their existing mortgage at a lower rate.

> 21. Plaintiffs continue to suffer when they are stuck in a mortgage rate which is more than two times higher than the current existing rates.

Rec. Doc. 1, at 4.  The complaint brings causes of action in tort, for breach of contract, for defamation, for intentional infliction of emotional distress, and for declaratory and injunctive relief.  Wells Fargo filed the instant motion to dismiss on December 29, 2011.

5

## THE PARTIES' ARGUMENTS

Wells Fargo argues that the Floyds' tort claims, claim for nonpecuniary contract damages, and claims for injunctive and declaratory relief should be dismissed.  First, it argues that the tort claims are facially prescribed.  Prescription would have begun to accrue from the date the two transactions were allegedly mishandled, which was no later than February 2007.  While prescription was interrupted by the commencement of the 2007 Action, it commenced anew upon dismissal of said action on September 5, 2007.  See Civil Action No. 07-2917, Rec. Doc. 38 (September 5, 2007 order dismissing case).  Thus, Defendant argues that any tort claims were prescribed no later than September 5, 2008.  Further, it argues that Plaintiffs' argument concerning the "continuing tort" exception to prescription is unavailing.  Namely, Plaintiffs' allegation that they continue to suffer injury and Defendant continues to report negative payment history to credit reporting agencies does not invoke the exception because only continual *acts*—not continuing injury—delay the accrual of prescription.  Additionally, Defendant argues that the fact that its alleged conduct "has not halted" because it "will not correct its error" is insufficient as a matter of law to invoke the continuing tort exception.  Rec. Doc. 15-1, at 7.

Second, Defendant argues that Plaintiffs have not pled a plausible and legally valid tort claim.  It argues that the defamation and intentional infliction of emotional distress ("IIED") claims fail.  As to the cause of action for defamation, Plaintiffs have not alleged facts supporting the elements of such a claim:  the allegedly defamatory words, the fact of publication, falsity, malice, or a causal nexus to any actual and actionable injury.  As to the cause of action for IIED, the facts pled do not support a facially plausible claim under Louisiana law.  Third, Wells Fargo argues that the Floyds may not recover nonpecuniary damages in contract because the mortgage contract was not by its nature intended to gratify a nonpecuniary interest and because the facts pled do not support a conclusion that Wells Fargo intended to aggrieve Plaintiffs' feelings.  Fourth, Defendant argues that equitable relief is not warranted or available.  Namely, the claim for an injunction must be dismissed because Plaintiffs have not alleged irreparable injury and because they cannot demonstrate a substantial likelihood of success on the merits; and the claim for declaratory relief should be dismissed based on similar reasoning.

Defendant characterizes the present suit as Plaintiffs' attempt to re-urge claims already litigated in the 2007 Action.

Defendant adverts that in the 2007 Action, the Floyds filed a total of four complaints (including three amending ones). Therefore, Defendant argues that at least as to the defamation claim, Plaintiffs' continued inability to come forward with basic facts warrants dismissal with prejudice.[1]  Notably, Defendant does not seek dismissal of the breach of contract claim.[2]

In opposition to the motion to dismiss, the Floyds, in setting forth the Rule 12(b)(6) standard, implicitly argue that their complaint contains enough factual matter to raise a reasonable expectation that discovery will reveal evidence supporting the elements of their claims.  They argue that their complaint clearly describes facts supporting an invocation of the continuing tort exception to prescription:  Defendant continues to publish knowingly false, defamatory, and financially harmful information to third parties, and this negatively impacts Plaintiffs' creditworthiness and financial health.  They also are forced to pay higher mortgage interest rates each month and undergo financial scrutiny at least twice per year, every year.

---

[1] It pithily states, "All things must eventually come to an end – even in litigation."  Rec. Doc. 15-1, at 12.

[2] Further, unlike in the present case, Defendant in the 2007 Action had argued that the 2007 complaint's claim for breach of contract failed to state a claim upon which relief can be granted.  Civil Action No. 07-2917, Rec. Doc. 15-1, at 13-14 (arguing that the 2007 Action complaint had failed to specify the contract alleged to be breached and had failed to provide the facts constituting the breach).

As to the defamation claim, Plaintiffs argue that it meets all the elements under Louisiana law:  Defendant has falsely, intentionally, and continuously published to various third-party financial and credit organizations that Plaintiffs were late in making payments, when Defendant knew its own error was the cause of mis-applied payments; and this has damaged Plaintiffs' credit and regard in the community.  Notably, Plaintiffs do not address arguments concerning the IIED claim, any claim for contractual nonpecuniary damages, or the claim for equitable relief. Plaintiffs ask that they "be allowed an opportunity to conduct discovery in which they believe will reveal evidence of each element of their claim."  Rec. Doc. 17, at 5.

In reply, Wells Fargo argues that Plaintiffs' defamation claim is preempted under the Fair Credit Reporting Act ("FCRA"). It argues that the FCRA preempts all state law claims against furnishers of information to consumer reporting agencies.  It asserts that it is such a furnisher of information and that the state law tort claims against it based on any allegedly tortious incorrect reporting of the Floyds' payment history are preempted. It also argues that any possible FCRA claims were already dismissed with prejudice in the 2007 Action, would be prescribed by the FCRA's statutory limitation provision, could not be

pressed forward in a private civil suit because of lack of standing, and are legally insufficient because of the complaint's lack of specificity concerning such claims.  In their sur-reply, the Floyds argue for a liberal construction of their complaint, argue that the FCRA is not necessarily preemptive of a defamation claim, and request time to amend their complaint if the Court deems it necessary.  In a "sur-sur-reply," Wells Fargo further argues in support of its assertion that all state law defamation claims against a furnisher of information are preempted by the FCRA.

**DISCUSSION**

**A.  Legal Standard**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  The allegations "must be simple, concise, and direct."  FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is

plausible on its face." <u>Ashcroft v. Iqbal</u>, __U.S.__, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  <u>Lormand v. U.S. Unwired, Inc</u>., 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations.  <u>Iqbal</u>, 129 S. Ct. at 1949-50.

**B.  Prescription of Tort Claims**

Tort claims under Louisiana law are subject to a liberative prescription of one year.  LA. CIV. CODE art. 3492.[3]  The one-year period for filing suit "commences to run from the day injury or damage is sustained." <u>Id.</u>  Transactions One and Two, the subsequent harassing calls, and the placing of Plaintiffs' account in arrears by March 2007 are alleged to have caused financial and personal injuries.  These injuries would be

---

[3] Liberative prescription is a mode of barring of actions as a result of inaction for a period of time.  LA. CIV. CODE art. 3447.

sufficient to begin the accrual of the one-year prescriptive period. Of course, the 2007 Action interrupted the prescriptive period, giving Plaintiffs another year in which to sue.[4] This period commenced on September 5, 2007—the date of the case's dismissal—and ended on September 5, 2008. Therefore, as to the conduct preceding the 2007 Action, suit is barred by liberative prescription unless Plaintiffs can prove that some exception applies.[5]

Plaintiffs' complaint contains a separate section entitled "CONTINUING VIOLATION," in which they allege that they continue to suffer because Defendant will not correct its error and because Plaintiffs continue to suffer economic loss each month from higher payments and a high mortgage rate. Rec. Doc. 1, at 4. These allegations do not invoke the "continuing tort" doctrine. The fact that an injury continues is not what counts, but rather that a defendant continues to *act* tortiously. See Crump v. Sabine River Authority, 737 So. 2d 720, 728 (La. 1999)

---

[4] Prescription is "interrupted" when suit is filed in a court of competent jurisdiction and venue. LA. CIV. CODE art. 3462. "If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption." LA. CIV. CODE art. 3466.

[5] "Under Louisiana law, when a defendant raising the exception of prescription shows that the petition is prescribed on its face, the plaintiff bears the burden of proving the prescriptive period has been suspended, interrupted or renounced." Wilhike v. Polk, 999 So. 2d 83, 85 (La. App. 4th Cir. 2008).

("A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act."). Thus, the fact of continuing economic loss from Transactions One and Two does not suspend the running of prescription. Additionally, the allegation that "Defendant will not correct its error," Rec. Doc. 1, at 4, does not invoke the continuing tort exception.  <u>See Crump</u>, 737 So. 2d at 729 (stating that the breach of the duty to right a wrong cannot be a continuing wrong that suspends the running of prescription).

Still, the complaint can be read as alleging recent tortious *conduct* that is not barred by prescription, or as alternatively invoking the continuing tort exception as to conduct that has continued since 2007.  This is the alleged *reporting* by Defendant of negative payment history.  <u>See</u> Rec. Doc. 1, at 4 ("*To date*, Defendant['s *conduct has not halted*. . . . Plaintiffs suffer when Defendant *continues to report* negative payment history . . . .") (emphasis added).  Thus, the Court holds that tort claims pertaining to the continuous reporting of negative payment history are not prescribed, but that other alleged tortious conduct may not be sued upon because any claim based upon such conduct is prescribed.

## C.  Defamation Claim

Under Louisiana law, a successful cause of action for defamation requires the existence of the following four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.  Costello v. Hardy, 864 So. 2d 129, 139 (La. 2004).  The Court finds that Plaintiffs have pled facts which, taken as true, establish a prima facie case of defamation to warrant denial of Defendant's request for dismissal.  First, although not enumerating specific words, Plaintiffs allege false and defamatory statements.  Rec. Doc. 1, at 4-5 (alleging that Defendant reports negative payment history and records that are erroneous).  Second, Plaintiffs allege that the statements were published by Wells Fargo.  Id. at 5 (alleging that Defendant publishes negative, incorrect payment records to third parties).  Third, Plaintiffs establish specific facts that, taken as true, establish fault on Wells Fargo's part.  Id. at 4-5 (alleging that the publication resulted from a list of wrongful and illegal practices used by Defendant).[6]  Fourth, Plaintiffs have alleged

---

[6] Defendant makes much of the fact that Plaintiff has not alleged malice.  True, the Fifth Circuit in Hardy v. Hartford Insurance Co. listed malice as an element of defamation under Louisiana law.  236 F.3d 287, 292 (5th Cir. 2001) (citing Cangelosi v. Schwegmann Bros. Giant Super Markets, 390

14

resulting injury.  Id. at 5 (seeking damages for financial

hardship resulting from negative publication of payment history).

Although Defendant argues that the defamation claim is not

factually pled so as to be facially plausible, the Court finds

the contrary is true based on the allegations of publication to

third parties of material that Plaintiffs allege to be erroneous

and injurious to both their reputation and their ability to

obtain credit and refinance their mortgage.

   However, Defendant argues that to the extent the defamation

claim is based upon alleged publication to credit reporting

agencies, the claim is preempted by the Fair Credit Reporting

Act.  The FCRA is comprehensive legislation designed to regulate

the consumer reporting industry.  Ross v. F.D.I.C., 625 F.3d 808,

812 (4th Cir. 2010), cert. denied, 131 S. Ct. 2991 (2011).  Among

other things, the Act regulates information provided to consumer

reporting agencies ("CRAs") by "furnishers of information."  See

15 U.S.C. § 1681s-2(a)(1)(A) (imposing duty on "furnishers of

---

So. 2d 196, 198 (La. 1980)).  However, the Louisiana Supreme Court,
recognizing the listing in Cangelosi of a malice element, explained that
"[t]he fault requirement is often set forth in the jurisprudence as malice."
Costello, 864 So. 2d at 139 (citing Cangelosi, 390 So. 2d at 198).  Thus,
Plaintiff's allegations of fault are sufficient.  Further, malice may be
alleged generally.  FED. R. CIV. P. 9(b).  Plaintiffs could be granted leave to
amend their complaint if arguendo a specific allegation of malice was
required.

information" to provide accurate information to CRAs).  One section of the FCRA addresses the Act's relationship to state laws, and it provides, in pertinent part:  "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." 15 U.S.C. § 1681t(b)(1)(F).  Thus, Section 1681t(b)(1)(F) appears to have a preemptive effect on state law in actions against furnishers of information to a CRA—such as a bank like Wells Fargo—where the conduct is subject to Section 1681s-2.

Section 1681s-2 pertains to the duties of furnishers of information.  They have statutorily enumerated duties to provide accurate information.  See 15 U.S.C. § 1681s-2(a).  To the extent the Floyds' defamation claim complains of inaccurate information furnished by Wells Fargo to CRAs, seemingly the claim would invoke Section 1681s-2 and, therefore, the preemptive rule of Section 1681t(b)(1)(F).  Plaintiffs complain of "incorrect payment records" published to third parties.  Rec. Doc. 1, at 5.  To the extent these third parties are CRAs, Plaintiffs have at least alleged that Wells Fargo as a "furnisher of information" has violated a duty to provide accurate information, which is

regulated under Section 1681s-2 and thus appears to be subject to the FCRA's preemptive provision in Section 1681t(b)(1)(F).  See Macpherson v. JPMorgan Chase Bank, N.A., --- F.3d ----, 2011 WL 6450777, at *1 (2d Cir. 2011) (interpreting Section 1681t(b)(1)(F) to preempt state defamation law); Ayers v. Aurora Loan Servs., LLC, 787 F. Supp. 2d 451, 457 (E.D. Tex. May 27, 2011) (where state law claim was based on allegation that defendant furnished inaccurate information to a CRA, the FCRA preempted the claim).  However, the law in this area is unsettled.  Some courts have found that Section 1681t(b)(1)(F) does not necessarily preempt a state law defamation claim.  See, e.g., Carlson v. Trans Union, LLC, 259 F. Supp. 2d 517, 522 (N.D. Tex. 2003).  Additionally, some courts interpret that section not to apply to non-statutory state law.  See, e.g., id. at 521; Manno v. Amer. Gen. Fin. Co., 439 F. Supp. 2d 418, 425 (E.D. Pa. July 12, 2006).[7]

All of this is further complicated by the preexistence of Section 1681h(e), which provides that "no consumer may bring any action . . . in the nature of defamation . . . with respect to the reporting of information against any . . . person who

---

[7] Of course, arguably such a holding might not make a difference under Louisiana defamation law, which is based in the general statutory rule defining a tort.  See LA. CIV. CODE art. 2315.

furnishes information to a consumer reporting agency" based on information disclosed pursuant to Sections 1681g, 1681h, or 1681m, "except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C. § 1681h(e). Thus, while Section 1681t(b)(1)(F) appears to preempt all state law claims, Section 1681h(e) appears to permit a defamation action in situations involving malice or willful intent to injure.[8]  Courts have taken three approaches in reconciling these sections:  (1) Section 1681t(b)(1)(F) *subsumes* Section 1681h(e); (2) Section 1681t(b)(1)(F) applies to state statutory *regulation* and Section 1681h(e) applies to state *tort actions*; and (3) Section 1681t(b)(1)(F) "should only be used to preempt state actions premised upon a credit furnisher's conduct occurring *after* the furnisher receives notice of a dispute."  Bank One, N.A. v. Colley, 294 F. Supp. 2d 864, 868-69 (M.D. La. Nov. 5, 2003).  The Fifth Circuit in Young v. Equifax Credit Information

---

[8] The Court notes Defendant's argument that Section 1681h(e) does not apply to furnishers of information, and thus cannot be a carve-out from the preemptive effect of Section 1681t(b)(1)(F).  Defendant acknowledges that the Fifth Circuit has never addressed the applicability of Section 1681h(e) to a furnisher of information and cites to the federal circuit decisions that have addressed the issue.  The Court, however, notes that Section 1681h(e) explicitly provides for a cause of action against furnishers of information, at least in some circumstances.  See 15 U.S.C. § 1681h(e) (providing that no consumer can bring an action for defamation "with respect to the reporting of information *against* any consumer reporting agency, any user of information, or *any person who furnishes information to a consumer reporting agency*" pursuant to certain sections, unless certain conditions are met).

_Services, Inc._, 294 F.3d 631, 638 (5th Cir. 2002) stated that the FCRA preempts state law defamation claims unless the plaintiff proves malice or willful intent—which may suggest the second or third approach.[9]  Thus, under the third approach to reconciling Sections 1681t(b)(1)(F) and 1681h(e), if the conduct complained of occurred prior to the furnisher of information receiving notice of a dispute,[10] and if the plaintiff proves the defendant's requisite mental state, his defamation claim may not be preempted.

With the general factual allegations pled, it is impossible for the Court to perceive the exact theory,[11] and therefore whether there is any preemption under Section 1681t(b)(1)(F). Thus, dismissal of the defamation claim would be inappropriate.

---

[9] The Fifth Circuit did not cite Section 1681t(b)(1)(F), so perhaps this is even a fourth approach.  It is definitely not the first approach because it does not acknowledge Section 1681t(b)(1)(F) and therefore does not assert that Section 1681t(b)(1)(F) subsumes Section 1681h(e).  It may be the second approach because it applies Section 1681h(e) to a tort action.  It also may be the third approach, though the court did not acknowledge the existence of Section 1681t(b)(1)(F).  The Court assumes the third approach for present purposes—a more difficult interpretation for Plaintiffs to prevail—to demonstrate that whatever Section 1681t(b)(1)(F) means, it should not result in dismissal of the defamation claim at this stage.

[10] _See_ 15 U.S.C. § 1681s-2(b) (imposing certain duties upon furnishers of information when they receive notice of a dispute regarding the completeness or accuracy of any information provided to a CRA).

[11] Namely, the following factual holes would need to be filled in to answer the preemption question:  To whom were the reports made?  Was malice or willful intent involved?  Did the alleged reporting occur before or after Wells Fargo allegedly received statutorily prescribed notice of a dispute regarding the completeness or accuracy of information provided to a CRA?  _See_ 15 U.S.C. § 1681s-2(b)(1).

Although Defendant also argues that any FCRA claim would be *res judicata*, the Court notes that the order dismissing the 2007 Action's federal claims with prejudice did not address FCRA claims, which were not alleged in the 2007 complaint.  Also, although Defendant argues that any FCRA claim based on conduct known by Plaintiffs and older than two years is prescribed under the FCRA's time limitation provision,[12] as previously stated, the complaint can be read as alleging continuing conduct that occurred within the past 2 years.  Further, Defendant is correct that there is no private right of action under Section 1681s-2(a).  Steed v. EverHome Mortg. Co., 308 F. App'x 364, 370 (11th Cir. 2009); Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 34 (3d Cir. 2011).  However, looking at the complaint, it is unclear whether the Floyds' defamation claim would invoke that or a different FCRA section.  See Young, 294 F.3d at 639 (noting that Section 1681s-2(*b*), which imposes a duty on furnishers of information to investigate and report disputed information after receiving notice of a dispute, may provide a private right of action, and that "[t]he plain language of the FCRA thus appears to impose civil liability on 'any person' violating a FCRA duty

---

[12] See 15 U.S.C. § 1681p ("An action to enforce any liability under this subchapter may be brought . . . not later than the earlier of . . . 2 years after the date of discovery by the plaintiff of the violation . . . or . . . 5 years after the date on which the violation . . . occurs.").

unless some exception applies.").  Plain and simple, Plaintiffs
have stated a claim under state defamation law.  Even though
there is possible preemption under the FCRA, because the exact
legal theory sued upon is unclear at this stage, it is
inappropriate to dismiss the defamation claim pursuant to the
FCRA.

**D.  IIED Claim**

     Plaintiffs in their opposition do not oppose Defendant's
request for dismissal of their IIED claim.  The Court finds that
the IIED claim fails as a matter of law.  Under Louisiana law, a
claim for IIED requires a showing that "(1) the conduct of the
defendant was extreme and outrageous; (2) the emotional distress
suffered by the plaintiff was severe; and (3) the defendant
desired to inflict severe emotional distress and knew that severe
emotional distress would be substantially certain to result from
the conduct." Murungi v. Tex Guaranteed, 693 F. Supp. 2d 597,
607 (E.D. La. Feb. 18, 2010), aff'd, 402 F. App'x 849 (5th Cir.
2010) (citing White v. Monsanto, 585 So. 2d 1205, 1209 (La.
1991)).  The most "severe" conduct alleged in the complaint is a
barrage of threatening phone calls at various times of the day
throughout the week.  This Court recognized in Murungi that
numerous harassing and embarrassing phone calls containing

21

obnoxious statements by the defendant were not enough to state an IIED claim under Louisiana law.  Id. at 607-08.  Likewise, the instant conduct of threatening phone calls and aggressive collection practices fails to state an IIED claim.  It is not of the requisite outrageous character and extremity in degree that would "go beyond all possible bounds of decency."  Id. at 608.  The IIED claim must be dismissed.

**E.  Claim for Contractual Nonpecuniary Damages**

Plaintiffs in their opposition do not oppose Defendant's request for dismissal of any claim for contractual nonpecuniary damages.  The Court finds that to the extent the complaint brings any such claim, it should be dismissed.  There are two methods for recovery of nonpecuniary contractual damages under Louisiana law:  (1) proof that the contract by its nature was intended to "gratify a nonpecuniary interest" or (2) proof that the obligor intended through his breach of contract to "aggrieve the feelings of" the obligee.  LA. CIV. CODE art. 1998.  Plaintiffs have not pled facts stating a claim under either theory.  As Defendant adverts, the only contract even alluded to in the complaint would be whatever agreement(s) governed Plaintiffs' loan and mortgage with Wells Fargo.  The Court agrees with Defendant that a mortgage or loan contract does not by its nature satisfy a

22

nonpecuniary interest.  See Morris v. Deluxe Check Printers, Inc., 395 So. 2d 927, 930 (La. App. 2d Cir. 1981) (rejecting the plaintiffs' contention that their contract to purchase checks satisfied an intellectual interest due to their desire to maintain a relationship with a bank and to maintain good credit standing).  Additionally, even if the complaint can be read as alleging Defendant's intentional breach of contract, the complaint does not allege that Defendant intended to aggrieve Plaintiffs' feelings.  See Davis v. Allstate Ins. Co., 2009 WL 122761, at *7 (E.D. La. Jan. 15, 2009) (where the plaintiff did not allege that the defendant intended to aggrieve or hurt her feelings, she did not state a claim for relief under article 1998); Pinero v. Jackson Hewitt Tax Serv., Inc., 594 F. Supp. 2d 710, 718 (E.D. La. Jan. 7, 2009) (same result where plaintiff did not allege that the motivating factor behind the breach of contract was a desire to aggrieve the plaintiff's feelings).  To the extent the complaint brings a claim for contractual nonpecuniary damages, it must be dismissed.

**F.  Claim for Injunctive and Declaratory Relief**

     Plaintiffs in their opposition do not oppose Defendant's request for dismissal of their claim for injunctive and declaratory relief from Defendant's allegedly illegal conduct.

However, the Court finds that Plaintiffs have pled sufficient facts to avoid dismissal of their claim for equitable relief. The Defendant argues that because Plaintiffs have not alleged irreparable harm, injunctive relief may not be granted.  However, "irreparable injury is not an independent requirement for obtaining a *permanent* injunction; it is only one basis for showing the inadequacy of the legal remedy."  CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2944, at 94 (2d ed. 1995) (emphasis added).  Plaintiffs allege that Wells Fargo refuses to stop its continuous negative financial reporting.  Merely giving Plaintiffs damages would not adequately remedy this alleged continuous wrongdoing.  Indeed, there is the threat of future conduct based on Plaintiffs' allegations.

### CONCLUSION

In summary of the above and foregoing, the Court rules as follows:

- Tort claims based on conduct other than continuous reporting to third parties are dismissed with prejudice as prescribed.

- Claims for IIED and contractual nonpecuniary damages are dismissed with prejudice.

- Other claims [including tort claims based on continuous

24

reporting (including defamation), breach of contract, and claims for injunctive and declaratory relief] remain.

For the foregoing reasons, **IT IS ORDERED** that Wells Fargo's Motion to Dismiss (Rec. Doc. 15) is hereby **GRANTED IN PART and DENIED IN PART,** as set forth above.

New Orleans, Louisiana, this 31st day of January, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

25